UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES M. ABERNATHY, *on his own behalf and on behalf of others similarly situated, et. al.*, | ) ) ) ) Case No: 3:23-cv-322 |
| Plaintiffs, | ) ) Judge Curtis L. Collier |
| v. | ) ) Magistrate Judge Jill E. McCook |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | ) ) ) |
| Defendant. | ) |

**M E M O R A N D U M**

Before the Court is a motion by Plaintiffs Heather Hutton, Kerrie Ingle, and Courtney Conaway for an order preliminarily approving the Rule 23 settlement agreement in this action. (Doc. 36.) Plaintiffs also request that the Court approve the class-action settlement notice and conditionally appoint interim class counsel and class representatives. (*Id.* at 1.) Lastly, Plaintiffs request the Court to set a final approval and fairness hearing. (*Id.*) Defendant, BlueCross BlueShield of Tennessee, Inc., does not oppose the motion. (*See id.*)

I.  **BACKGROUND**

On August 11, 2021, Defendant announced it would require its employees to be vaccinated against COVID-19 within six weeks. (Doc. 27 ¶ 16.) Employees could request an exemption for medical or religious reasons, and Defendant would consider the requests at its discretion on a case-by-case basis. (*Id.* ¶ 16–17.) Any employee who failed to vaccinate and did not receive an exemption would be terminated. (*Id.* ¶ 16.) Defendant offered employees a thirty-day extension period beyond the October 4, 2021 date as an opportunity for them "to pursue other positions within the company that were not subject to [Defendant's] vaccine policy." (Doc. 37 at 4.)

Plaintiffs Heather Hutton, Kerrie Ingle, and Courtney Conaway were employees of Defendant at the time the company's vaccine mandate was enacted. Plaintiffs each "submitted a request for a religious or medical accommodation through Defendant's designated COVID-19 vaccination exemption process." (Doc. 27 ¶ 18.) Plaintiffs requested an accommodation to include remote work, or alternatively, heightened safety protocols like mask wearing, social distancing, and frequent COVID-19 testing. (*Id*. ¶ 21.)

Plaintiff Conaway submitted a medical accommodation and provided Defendant with "all requested medical information indicating the nature of her [Americans with Disabilities Act "ADA"] qualifying disability and the associated contraindications to the COVID-19 vaccine." (*Id*. ¶ 20.) Plaintiffs Hutton and Ingle submitted a religious exemption.

> In each of their respective accommodation requests, Plaintiffs . . . explained their belief that the COVID-19 vaccines—as well as other vaccines—were developed (either directly or through testing) using fetal cell lines derived from aborted fetal tissue and that it would be sinful to interject such products into their bodies. They believe a Christian's body being surrendered to God is a form of spiritual worship. (*See, e.g.,* Romans 12:1). Plaintiff [Hutton] additionally believes that the vaccine causes the body to create proteins God did not intend the body to create, which is in itself a form of disobedience to God.

(*Id*. ¶ 19.)

After review, Defendant denied the requests. (*Id*. ¶ 24.) Defendant asserts, "Plaintiffs worked directly with Defendant's members, providers, group-plan administrators, and/or customers, including those whom were immunocompromised and/or had other significant health conditions, and, without being vaccinated, they could not perform their job duties without putting themselves or others in danger upon in-person services resuming as the pandemic subsided." (Doc. 30 ¶ 44.) Defendant determined that the proposed accommodations for public-facing employees, such as indefinite remote work, would cause Defendant's operations and business undue hardship.

(*Id*. at 1.) When Plaintiffs refused to get the vaccine, Defendant fired them and their similarly situated coworkers. (Doc. 27 ¶ 28.)

On September 7, 2023, Plaintiffs James M. Abernathy, Heather Hutton, and Kerry Ingle filed a putative class-action complaint, alleging that Defendant discriminated against them based on their religion under Title VII, 42 U.S.C. § 2000(e) *et seq*.[1] (Doc. 1.) On December 16, 2024, Plaintiffs amended the class-action complaint, adding Plaintiff Courtney Conaway and a claim against Defendant pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq*. (Doc. 27 ¶ 10.) Plaintiffs allege Defendant "issu[ed] a uniform denial of all accommodation requests." (*Id*. ¶ 34.) According to Plaintiffs, "Defendant's discriminatory actions left Plaintiffs and those similarly situated with the formidable task of choosing between their faith or health, and their jobs." (*Id*. ¶ 3.)

Although the parties dispute Defendant's liability, the parties participated in an in-person mediation on November 19, 2024, with the assistance of an experienced mediator. (Doc. 37 at 5.) "The negotiations included the exchange of informal discovery regarding the size and scope of the Settlement Class and certain facts related to the strength of the claims of Plaintiffs and those similarly situated, and defenses available to [Defendant]." (*Id*. (citing Doc. 36-3 ¶ 18–19).) The mediation was successful and produced a settlement agreement in principle. (*Id*.) Plaintiffs now move the Court for an order preliminarily approving the settlement agreement. (Doc. 36.) Defendant does not oppose the motion. (*See id*.)

---

[1] On April 22, 2025, the parties stipulated to the dismissal of Plaintiff James M. Abernathy. (Doc. 35.)

## II. DISCUSSION

The parties seek preliminary approval of the settlement agreement under Rule 23 of the Federal Rules of Civil Procedure. Approval of a Rule 23 class action settlement occurs in three steps: "(1) the court must preliminarily approve the settlement; (2) the class members must be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001)).

The Court will first address whether the settlement agreement should be preliminarily approved. The Court will then address the proposed class notice, as well as the proposed class appointments.

### A. Rule 23 Preliminary Approval of Settlement

At the preliminary approval stage, the Court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court will address the requirements in turn.

#### 1. Likelihood of Approval Under Rule 23(e)(2)

To preliminarily approve the settlement agreement under Rule 23(e)(2), the proposed settlement must be fair, reasonable, and adequate. To determine this, the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal.

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). This rule largely encompasses seven factors known as the *UAW* factors, which the Court of Appeals for the Sixth Circuit uses in its fairness analysis. The *UAW* factors consider: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

The Court will address the Rule 23 factors in turn, often supplementing with the *UAW* fairness factors.

### a. Adequacy of Representation and Arm's Length Negotiation

"The first two factors under Rule 23(e)(2)—adequate representation and whether the proposal was negotiated at arm's length—'identify matters that might be described as 'procedural' concerns,'" that is, the actual performance of counsel acting on behalf of the class. *Busby v. Bonner*, No. 2:20-CV-2359, 2021 WL 4127775, at *3 (W.D. Tenn. Jan. 28, 2021) (quoting Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes).

> The information submitted under Rule 23(e)(1) may provide a useful starting point in assessing these topics. For example, the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel

5

> negotiating on behalf of the class had an adequate information base. The pendency of other litigation about the same general subject on behalf of class members may also be pertinent. The conduct of the negotiations may be important as well. For example, the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.

Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. These factors overlap with the first *UAW* factor, the risk of fraud or collusion, and the third *UAW* factor, the amount of discovery engaged in by the parties. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Jones v. Varsity Brands, LLC*, No. 2:20-CV-2892, 2024 WL 3049464, at *11 (W.D. Tenn. June 18, 2024) (quotation and citation omitted).

Here, class counsel has adequately represented the class. The parties are represented by class counsel who are qualified and experienced in this type of litigation. (*See* Doc. 36-3, ¶¶ 3–12.) Plaintiffs' counsel thoroughly investigated the claims, participated in discovery, and attended "[n]umerous class-wide conferences . . . [and] multiple one-on-one meetings with the putative class members and potential witnesses." (Doc. 37 at 18.) Plaintiffs' counsel further state they "devoted many hours developing damages calculations and models to guide [them] in settlement negotiations" leading up to the mediation. (Doc. 36-3 ¶ 20.) "From information provided by Defendant and the majority of putative class members, [counsel] created detailed datasets that not only assisted with known class members' claims but also allowed [them] to make reasonable projections of claims of other members of the Settlement Class." (*Id*.) Therefore, the factual record is sufficiently developed for class counsel to make an informed and adequate decision as to settlement. *See Busby*, 2021 WL 4127775, at *3.

The Court also finds the settlement agreement was negotiated at arm's length. On November 19, 2024, the parties attended an in-person mediation that "went well into the evening

6

hours." (Doc. 37 at 18.) The mediation "was reached with reference to the parties' [] analysis of respective damages models that projected the potential risks and benefits to all parties." (*Id*. at 17 (citing Doc. 36-3 ¶ 20).) The facilitation of the neutral and experienced mediator bears on whether the negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Arledge v. Domino's Pizza, Inc*., No. 3:16-CV-386, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018) (quotation and citation omitted).

Further, class counsel and both parties "resoundingly" favor settlement, which weighs in favor of approval. (Doc. 37 at 20.) The reaction among the class members has also been positive, with twenty-seven of the thirty-two class members "unanimously endors[ing] the Settlement." (*Id*.) For these reasons, the Court finds the settlement agreement is the product of a procedurally fair process. *See Fitzgerald v. P.L. Mktg., Inc*., No. 217CV02251, 2020 WL 7764969, at *11 (W.D. Tenn. Feb. 13, 2020) (citation omitted).

### b. Adequacy of Relief and Equitable Treatment of Class Members

A court must next consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). These factors overlap with the second *UAW* factor, the complexity, expense, and duration of litigation,

and the fourth *UAW* factor, the likelihood of success on the merits. Here, each of these factors supports preliminary approval of the settlement agreement in this case.

First, the costs, risks, and delay of trial and appeal favor settlement. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (finding the risks of continued litigation to be the most important factor). Each side believes in its case, but there would be significant uncertainty and risk for both sides if this case were to go to trial. *See Fitzgerald*, 2020 WL 7764949, at *12 ("[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial."). There are several factual questions that could go either way at trial. For example, "[c]ounsel does not know whether a jury would determine that each Settlement Class Member objected to vaccination upon a sincerely held religious belief or bona fide medical need, which are questions of fact reserved for the jury." (Doc. 37 at 18.)

Moreover, thus far, the parties have worked together to avoid expensive and extensive litigation. Continued litigation would only be expensive and delay potential recovery, and there is a strong public interest in encouraging settlement of class-action suits because they are "notoriously difficult and unpredictable and settlement conserves judicial resources." *Granada Invs. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

Second, the settlement agreement's proposed payment procedures appear adequate. *See* Fed. R. Civ. P. 23(e)(2)(D). Each participating settlement class member will receive a settlement award based on "the objective and subjective relative value of their claims" such as their salary and subsequent mitigation, and the "[c]laims will be processed by a third-party neutral settlement administrator with the assistance of counsel." (Doc. 37 at 17–18.) Without outlining the terms of

the agreement filed under seal, the Court also finds the proposed award of attorney fees is reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

Having considered all the relevant factors, each of which supports preliminary approval, the Court determines it "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### 2. Likelihood of Settlement Class Certification

The Court must now determine whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).  A court may certify a class for settlement purposes where the proposed class "satisfies each of Rule 23(a)'s requirements and falls within one of three categories permitted by Rule 23(b)." *UAW*, 497 F.3d at 625.  The Court will start with the requirements of 23(a).

#### a. Rule 23(a) Requirements

Rule 23(a)(1)–(4) requires numerosity, commonality, typicality, and adequacy of representatives for class certification.  The Court will address each factor in turn.

##### i. Numerosity

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Substantial numbers of potential litigants in a class usually raises a presumption of impracticability, yet the numerosity requirement does not involve "a strict numerical test." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).  While there is no magic number requirement, "[a]s a general guideline . . . a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *Helwig v. Concentrix Corp.*, 345 F.R.D. 608,

619 (N.D. Ohio 2024) (citation omitted); *see also Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014).

Numbers "are not a perfect predictor" of impracticability of joinder, however, so courts must additionally consider the "ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion." *Turnage v. Norfolk S. Corp.*, 307 F. App'x 918, 921 (6th Cir. 2009). Courts also look at the judicial economy and "the practicality with which individual putative class members could sue on their own." *Pritchard v. Portfolio Recovery Assoc., LLC*, No. 3:14-CV-293, 2016 WL 11431646, at *4 (E.D. Tenn. Apr. 13, 2016), *report and recommendation adopted sub nom. Pritchard v. Portfolio Recovery Assoc, LLC*, No. 3:14-CV-293, 2016 WL 3661293 (E.D. Tenn. July 5, 2016). "The plaintiff is not required to 'establish that it is impossible to join all members of the proposed class[,]' but simply that joinder 'would be difficult and inconvenient.'" *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 182 (S.D. Ohio 2012) (quoting *Day v. NLO*, 144 F.R.D. 330, 333 (S.D. Ohio 1992) (alteration in original)).

Here, there are thirty-two class members. While this number of class members alone may not raise a presumption of impracticability of joinder, there appears to be at least some other indications of impracticability. For example, it would likely be difficult for the individual class members to sue on their own. According to Plaintiffs' counsel,

> [m]any of the members of the Settlement Class filed individual charges with the [Equal Employment Opportunity Commission ("EEOC")] prior to engaging our firm; some members requested class-wide relief while others did not. Some members received EEOC Right to Sue notices prior to our engagement, while others still have not received such notice from the EEOC. Thus, the time period for seeking intervention or joinder for any one individual would be extremely difficult to calculate, thus posing the unreasonable risk that certain Settlement Class Members' claims could later be deemed untimely despite their diligence in prosecuting their claims.

(Doc. 36-3 ¶ 17.) Judicial economy also supports class certification because, as Plaintiffs notes, "piecemeal treatment would waste judicial resources and require extensive Court involvement via motion practice, scheduling issues, overlapping evidence, duplicative discovery, and the like." (*Id*.)

While the Court finds joinder impracticable generally, the Court notes that joinder is less impracticable in this case because the class members are dispersed only throughout Tennessee and surrounding states and are easily identifiable through employment records. *See Pritchard*, 2016 WL 11431646, at *4 (citing cases where joinder of members of a proposed class was not impracticable where most class members were residents of the state and could be identified through medical records). Nevertheless, due to the difficulty for class members to bring their cases individually and judicial economy, the Court finds that joinder "would be difficult and inconvenient" and that the numerosity requirement is met. *See Swigart*, 288 F.R.D. at 182.

### ii. Commonality

To satisfy the commonality requirement, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Falcon*, 457 US. at 157). The putative members' claims must depend on a common contention capable of class-wide resolution, where the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs argue there are common questions of law and fact because each class member requested and were denied a religious or medical accommodation from Defendant's COVID-19 vaccine policy and they suffered an adverse employment action as a result. (Doc. 37 at 9 (citing

11

36-3 ¶ 15).) Whether Defendant wrongly failed to accommodate employees who requested exemptions is a factual question common to all members of the class. Therefore, it is capable of class-wide resolution, satisfying the commonality requirement. *See Dukes*, 564 U.S. at 350.

### iii. Typicality

To satisfy the typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Lit.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The "claim is not typical if '[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.'" *Woodall v. Wayne Cnty, Mich.*, No. 20-1705, 2021 WL 5298537, at *4 (6th Cir. Nov. 15, 2021) (quoting *Sprague*, 133 F.3d at 399) (alteration in original).

Here, Plaintiffs claims "(1) "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members"; and (2) are "based on the same legal theor[ies]" as other class members' claims." *See In re Flint Water Cases*, 499 F. Supp. 3d 399, 422 (E.D. Mich. 2021) (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007)). Thus, resolving one plaintiff's claims would resolve them for the class, satisfying typicality. *See Sprague*, 133 F.3d at 399.

### iv. Adequacy of Representatives

To satisfy the adequacy requirement, Plaintiffs must demonstrate that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Sixth Circuit has articulated two criteria for determining adequacy of

12

representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 576 (E.D. Tenn. 2014) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)). In addition, the Court should "determine whether class counsel are qualified, experienced, and generally able to conduct the litigation." *Young*, 693 F.3d at 543 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)) (internal quotation marks omitted).

The named Plaintiffs' interests are identical to those of the unnamed members of the class, so the "common interests" requirement is accordingly met. As to the second "adequacy" requirement, Plaintiffs have "been available to counsel at every turn." (Doc. 37 at 11.) The Court concludes the named Plaintiffs will continue to, through qualified counsel, "vigorously prosecute the interests of the class." *See In re Skelaxin*, 299 F.R.D. at 576. Lastly, as discussed in more depth above, Plaintiffs are represented by class counsel who are qualified and experienced in this type of litigation. (*See* Doc. 36-3, ¶¶ 3–12.) Accordingly, Plaintiffs have met the adequacy of representation requirement for purposes of preliminary settlement certification.

Having found numerosity, commonality, typicality, and adequacy of representation met, the Class satisfies the Rule 23(a) prerequisites.

### b. Rule 23(b) Requirements

The Class must also satisfy one of the three requirements of Rule 23(b). *Dukes*, 564 U.S. at 345. Plaintiffs contend the class satisfies Rule 23(b)(3), which permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for

13

the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Court will address the predominance and superiority requirements of 23(b)(3) in turn below.

### i. Predominance

To satisfy the predominance requirement, Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This means "a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011). Predominance is satisfied if the class's individual questions of law or fact "are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).

> At this stage, to conditionally certify a class for purposes of settlement,
>
> the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts. Courts have found that settlements "obviate[ ] the difficulties inherent in proving the elements of varied claims at trial," and consequently, "courts are more inclined to find the predominance test met in the settlement context."

*In re Flint Water Cases*, 499 F. Supp. 3d at 424 (citations omitted).

Plaintiffs have met the predominance requirement for purposes of preliminary settlement certification. The alleged action arises out of a common set of facts because each settlement-class member "sought accommodation from the same employment policy shortly after its enactment." (Doc. 37 at 13.) *See Powers,* 501 F.3d at 619 ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." (citation omitted)).

14

Case 3:23-cv-00322-CLC-JEM   Document 44   Filed 07/11/25   Page 14 of 19
PageID #: 331

### ii. Superiority

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006)). A class action is superior if it would "vindicate[ ] 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617 (citation omitted). Relevant factors in this inquiry include the interests of the class members in individually controlling separate actions, the extent and nature of the litigation already begun by members of the class, and the desirability of concentrating the litigation in a particular forum. *In re Flint Water Cases*, 499 F. Supp. 3d at 425.

While the litigation has not proceeded beyond the pleadings stage, the parties have worked together for nearly two years to efficiently resolve the case. As Plaintiffs state, the settlement-class members "have maximized substantial efficiencies by negotiating a class settlement prior to formal discovery rather than prosecuting individual actions." (Doc. 37 at 13.) Further, if the parties were to resolve this dispute with only the named plaintiffs, many of the remaining class members would be greatly disadvantaged moving forward. The individual class members would likely be "without effective strength" to bring Defendant, a large company, into court at all. *See Amchem*, 521 U.S. at 617. Moreover, some class members would be procedurally barred from bringing Defendant into court. To bring a failure-to-accommodate claim, a plaintiff must first file a discrimination charge with the EEOC. *See, e.g., Terre v. Hopson,* 708 F. App'x 221, 226 (6th Cir. 2017). Thus, any class member "who did not fully pursue administrative remedies would be

15

Case 3:23-cv-00322-CLC-JEM   Document 44   Filed 07/11/25   Page 15 of 19
PageID #: 332

precluded from pursuing legal claims and any potential opportunity to receive any remedy for the harms alleged." (Doc. 37 at 14.) For these reasons, the class action is a better way to adjudicate the claim than individual litigation, and superiority is satisfied.

Therefore, the requirements of Rule 23(a) and Rule 23(b)(3) are met, and the Court finds that it will likely be able to certify the class for purposes of approving the settlement.

Accordingly, having decided that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class the purposes of judgment on the proposal," the Court will **PRELIMINARILY APPROVE** the settlement agreement. *See* Fed. R. Civ. P. 23(e)(1)(B)(i).

### B. Proposed Notice to Class Members

Next, the Court must "direct notice in a reasonable manner to all class members who would be bound" by a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). "The notice should be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Meyers v. Dtna Trucks N. Am., LLC*, No. 14-2361, 2014 WL 12531121, at *9 (W.D. Tenn. Oct. 8, 2014) (quoting *UAW*, 497 F.3d at 629–30 (6th Cir. 2007)). The district "court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

> The notice may be by one or more of the following methods: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;

16

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In this case, the notices meet these requirements and put class members on proper notice of the settlement. *See* Fed. R. Civ. P. 23(c)(2)(B). A shorter postcard notice will be distributed to all thirty-two class members by mail (Doc. 36-2 at 3–5), and a longer notice will be available by website link listed in the postcard notice (Doc. 36-2 at 7–14). The notices provide class members with a full and fair opportunity to review the settlement terms and make an informed decision. For example, the notices explain clearly why a class member received the notice, what the lawsuit is about, and why there is a settlement. (Doc. 36-2 at 7–14.)

The notices also provide the net settlement amount which shall be distributed to all settlement class members after deducting the attorney fees. (*Id*. at 13.) "While the notice does not describe the distributions to each [s]ettlement [c]lass [m]ember, it provides contact information for counsel so that information can be ascertained, as each sum paid is member-specific." (Doc. 37 at 20.) The notices further explain the process for a class member to object to the settlement and the binding effect of participating in the settlement. (Doc. 36-1 at 4, 11.) Lastly, the notices provide a contact if a class member has additional questions or concerns. (*Id*. at 14.)

The notices are clear and direct. "All information is presented in an easy-to-read manner with a table of contents and section headings such as 'What am I giving up to get a payment or

17

stay in the Class?' and 'How do I know if I am part of the settlement?'" *Fitzgerald*, 2020 WL 7764949, at *14. Thus, the notice adequately apprises the members of the class and affords them the opportunity to make informed decisions in accordance with the requirements of Rule 23(c) and due process. The Court will **APPROVE** the notice plan (Doc. 36-2).

### C. Appointment of Interim Class Counsel

Plaintiffs request that the Court appoint Jesse D. Nelson and Clint Coleman with East Tennessee Employment Law as class counsel. Federal Rule of Civil Procedure 23 authorizes the court to "designate interim counsel to act on behalf of a putative class before determining whether to certify that action as a class action." Fed. R. Civ. P. 23(g)(3). When an applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate. Fed. R. Civ. P. 23(g)(2). To assess an applicant's adequacy to serve as class counsel, courts must consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Further, any applicant the court appoints "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

The Court finds that the proposed appointment would adequately and efficiently represent the interests of the class. Since the time counsel was retained for this class action, "the firm has devoted significant resources to identifying putative class members, investigating the factual circumstances of individuals' claims, working through the EEOC's administrative procedures, filing and defending motions, drafting and responding to limited discovery, attending conferences with the Court, and researching caselaw from throughout the country – caselaw that continues to develop." (Doc. 36-3 ¶ 13.) Counsel have experience in class-action litigation and "have

18

Case 3:23-cv-00322-CLC-JEM   Document 44   Filed 07/11/25   Page 18 of 19
PageID #: 335

successfully prosecuted other multi-plaintiff COVID cases." (Doc. 37 at 15.) Therefore, the Court will **APPOINT** Mr. Nelson and Mr. Coleman as co-lead class counsel.

### D. Appointment of Class Representatives

Plaintiffs move the Court to conditionally name them as class representatives. The Court finds that named Plaintiffs have fairly and adequately protected the interests of the class, as well as fulfilled their duties throughout the litigation, including "reviewing pleadings, assisting with information discovery, and participating in the mediation and settlement process." (Doc. 37 at 15 (citing 36-3 ¶ 17).) The Court will therefore conditionally **APPOINT** Plaintiffs as class representatives for the settlement class.

### III. CONCLUSION

The Court will **GRANT** the motion (Doc. 36) and preliminarily approve the proposed settlement agreement (Doc. 36-1). The Court will **APPROVE** the proposed settlement notice plan (Doc. 36-2) and **DIRECT** the parties to provide notice of the proposed settlement to the class members. The Court will **APPOINT** Mr. Nelson and Mr. Coleman as co-lead class counsel and **APPOINT** Plaintiffs as class representatives. The Court will hold a final approval and fairness hearing on **Thursday, October 16, 2025, at 2:00 p.m. Eastern Time** at the federal courthouse in Chattanooga, Tennessee.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**